23 C.C.P.A.(Patents)

## GENERAL BAKING CO. v. COMMANDER-LARABEE CORPORATION.

Patent Appeal No. 3600.

Court of Customs and Patent Appeals.
March 23, 1936.

428

Warfield & Brown, of New York City (F. P. Warfield and T. R. V. Fike, both of New York City, of counsel), for appellant.

Harold Olsen, of Minneapolis, Minn. (Paul, Paul & Moore, of Minneapolis, Minn., and Edmund H. Parry, Jr., of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellee, Commander-Larabee Corporation, filed an application in the United States Patent Office on April 9, 1932, for registration of a mark consisting of the word "Sunfed" printed in plain block letters, and in its application alleged that it had adopted "and used the trade-mark shown in the accompanying drawing for White Bread, Whole Wheat Bread, Macaroni, Spaghetti, Crackers, Pancake Flour, Cereal Breakfast Food, Biscuit Flour and Cake Flour," and that this trade-mark had been "continuously used and applied to said goods in applicant's business since March 11, 1932."

General Baking Company, appellant, filed notice of opposition to this application for registration on June 28, 1932, in which notice it was alleged that the opposer believed it would be damaged by said registration; that ever since March 16, 1931, opposer had been incorporating vitamin D in its bread, which, since 1915, had been known as Bond Bread, and that it believed that prior to March 16, 1931, no other person, corporation, firm, or association had ever made and sold in the United States, or elsewhere, a bread in which vitamin D was incorporated; that opposer had created a very valuable good will and had spent large sums for advertising, by reason of which its bread had become known as "Sunshine Vitamin-D Bread"; that on or about March 16, 1931, the opposer had adopted as its trade-mark for said bread a "distinctive representation of the sun," and certain wording used in association therewith, to wit: "Licensed

by the Wisconsin Alumni Research Foundation under Steenbock Pat. No. 1,680,818," and the following statement: "This bread brings you the extra Sunshine Vitamin-D you need"; that on or about May 9, 1931, it also adopted as its trade-mark a certain other "distinctive representation of the sun" unassociated with any wording; that on or about December 15, 1931, the opposer also adopted as its trade-mark "a distinctive representation of the sun" and certain wording used in connection therewith, to wit, "Sunshine Vitamin-D Bread," and "Guaranteed to Contain Vitamin-D Sufficient for Normal Nutrition," and "Licensed by the Wisconsin Alumni Research Foundation under Steenbock Pat. No. 1,680,818," and applied this trade-mark and the "distinctive representation of the sun," unassociated with any wording, thereafter.

The notice of opposition also states, in paragraph 3 thereof, that the applicant, Commander-Larabee Corporation, represents that the flour known by the name "Sunfed" contains vitamin D, and proposes to supply bakers purchasing its flour with advertising matter representing that bread made from the applicant's flour has been impregnated with vitamin D by a natural sunshine process; that it proposes to do so by featuring a mark printing such information within a representation of the sun on bread wrappers to be supplied to said bakers.

Paragraph 4 of the notice of opposition is as follows:

"4. Opposer is informed and believes: that applicant has never used the mark for which registration is sought upon white bread, whole wheat bread, or any kind of bread; that applicant is engaged in the business of making flour and selling the same to bakers and others desiring to purchase flour for making bread and other goods; that applicant has no connection with such purchasers of its flour other than that involved in the purchase and sale of the flour; that applicant has never engaged in the business of making or selling bread; that applicant is neither the owner of the bread on which the mark sought to be registered herein is applied, nor an agent authorized to sell or dispose of said bread."

The appellee-applicant answered the notice of opposition, denying that the representations of a sun in association with the wording used by the opposer, namely, "Li-

censed by the Wisconsin Alumni Research Foundation under Steenbock Pat. No. 1,680,818," and "This bread brings you the extra Sunshine Vitamin–D you need," constituted a trade-mark, and that the alleged "distinctive representation of the sun," associated with any wording, constituted a trade-mark, and alleged that the said marks constituted merely a grade mark adopted for the sole purpose of indicating the grade, kind, style, or quality of the bread manufactured or sold by opposer under its trade-mark "Bond Bread." The answer further admits that the applicant manufactures and sells flour under the trade-mark "Sunfed," and that it proposes to supply bakers purchasing its said flour with advertising matter indicating that applicant's flour had been activated with vitamin D by a natural sunshine process.

The answer further denies specifically each and every allegation contained in paragraph numbered 4 of the notice of opposition.

By paragraph 10 of this answer the applicant alleges that it has used the mark "Sunfed" on flour sold to bakers, to be baked into bread- for distribution to the public under the trade-mark "Sunfed," and continues: "And applicant has carried out its said plan as a logical and natural expansion of its business and has *manufactured bread, crackers, macaroni, spaghetti and other flour products from 'Sunfed' flour and sold the same under its trademark 'Sunfed.'*" (Italics ours.)

Further answer is made as to matters which we will not find it necessary to allude to here.

The issues received careful and repeated consideration by the tribunals of the Patent Office. The Examiner of Interferences found and held that the marks of both parties are used on wheat bread; that the notation "Sunshine Vitamin–D" performs a merely descriptive function, and is generally descriptive of the kind of bread manufactured by the opposer. The Examiner of Interferences was further of opinion that the General Baking Company was a licensee under the said Steenbock patent, and that other licensees under that patent might use the notation "Sunshine Vitamin-D" in description of bread made by them. Therefore the Examiner of Interferences held that the opposer did not own the said mark within the meaning of the statutory language "owned and used by another" of the confusion in trade

clause of section 5 of the Trade-Mark Act of February 20, 1905, as amended (15 U.S. C.A. § 85). He was further of the opinion that no confusion in trade would be likely by the concurrent use of the notations "Sunshine Vitamin-D" and "Sunfed." As to the contention of the opposer that applicant used its mark only on flour, and that the trade-mark used inured only to bakers who might bake the bread from such flour, the Examiner remarked: "The examiner is not persuaded that such use may not inure to the applicant."

The Commissioner of Patents, on appeal, affirmed the decision of the Examiner of Interferences. In doing so, the Commissioner held that the Examiner of Interferences erred in finding that the use by General Baking Company of the notation "Sunshine Vitamin-D" had been merely descriptive of its goods, from which it had derived no trade-mark ownership, and that, because of this, it could not successfully oppose the registration applied for. The Commissioner was of opinion that the validity of the opposer's mark was not a proper subject of inquiry, and that the opposer was not required to establish a strictly trade-mark use; that all that was required of the opposer was the showing of such a use as would support a finding of probable damage from the registration. The Commissioner was, however, of the opinion that the marks of the respective parties were not confusingly similar, although applied to identical goods. The Commissioner had the following to say on this subject:

" * * * The notation 'Sunshine Vitamin-D' as applied to appellant's bread wrapper is surrounded with a heavy circular border pierced outwardly by a number of symmetrically-spaced, wedge-shaped points; but in the absence of the words the design itself would only vaguely suggest a representation of the sun. Applicant's mark, on the other hand, as shown by the specimen wrappers submitted with its application, is enclosed in an oblong border partly penetrated from within by a conventional design of light radiations. This may be said to represent the rays of the sun when viewed in association with the word 'Sunfed,' but certainly it could not be described as a representation of the sun. I am clearly of the opinion that no confusion could reasonably occur between the design features of the two marks, and that the question of deceptive similarity

must therefore be determined from a comparison of the words and the manner of their application.

"Appellant's bread wrapper conspicuously displays the word 'Bond,' printed in letters so large in comparison with those of the 'Sunshine Vitamin-D' mark as to render the latter relatively insignificant. The evidence clearly establishes that the 'Bond' mark has been used to identify appellant's product for over fifteen years when, in 1931, it incorporated vitamin D in its bread. That mark is still used as before, and the wrappers have not been materially changed except that the notation 'Sunshine Vitamin-D' has been added, according to appellant's president, 'to indicate to the purchasing public that Bond bread now contains 'Sunshine Vitamin-D.' On applicant's wrapper the word 'Sunfed' very strikingly predominates. It is many times larger than any other printed matter, and like 'Bond' on appellant's wrapper, constitutes the outstanding feature. In my opinion it would be necessary to inspect the two wrappers rather critically to discover any similarity in language or design. Under these circumstances I am unable to believe that the concurrent use of the two marks under consideration would be likely to confuse the public or to damage appellant."

The Commissioner also discussed the contention of the opposer that the applicant had made no trade-mark use of its mark, and that registration should be therefore denied. As to this point the Commissioner was of opinion that such contention should not be upheld; that the contention of the opposer that the applicant had never used the mark for which registration was sought upon bread of any kind was denied in the answer, "but such denial was wholly unnecessary, for the averment in the notice put nothing in issue. Obviously what opposer was informed, or what it believed, are matters with which neither the applicant nor the Patent Office is concerned." The Commissioner added that there was no evidence in the record to overcome the sworn statement found in the application as to trade-mark use, "even were the matter properly pleaded."

The opposer requested a reconsideration, which was granted, and again the Commissioner rendered an extended decision denying the rehearing. Rehearing was requested a second time, attached to the application for which was a series of interrogatories drawn, as it was claimed, and presented under Equity Rule 58 (28 U.S.C.A. following section 723). In response to this, the Commissioner rendered a further decision denying a second reconsideration, and refusing to reopen the case for the taking of further testimony.

From the three decisions of the Commissioner, the opposer has prayed an appeal to this court. In this court the appellant moved to reopen the case in the Patent Office and to require answer to said interrogatories, which motion was denied.

The appellant-opposer took the testimony of one witness, Frederic H. Frazier, chairman of the board of directors of the General Baking Company. This testimony shows the general facts as to the adoption of the appellant's mark and its use upon appellant's product and the extent of the advertising expenditures and campaigns. It shows, generally, that the opposer conducts a very large business in the sale of bread, which has been known since 1915 as "Bond Bread," and has since been extended until it includes forty-nine operating plants scattered over the whole of the United States, with a gross sale, prior to 1930, of about 270,000,000 loaves of bread in a year. Large sums of money, approximating $12,000,000, were spent from 1915 to 1930 on advertising the brand known as "Bond Bread." In 1930 the company made contact with the Paediatric Research Foundation of Toronto, Canada, and undertook to operate under what was called the Steenbock patent, hereinbefore referred to, by means of which vitamin D was said to be incorporated into the bread manufactured by the opposer. Since that time, this practice has been extended until, as we understand the record, all bread now produced by the appellant is claimed to contain vitamin D. The company, at various times since that date, has had designs which are placed upon the wrappers used in selling its bread which were intended to convey to the purchaser the idea that the bread in said wrappers was "Sunshine Vitamin-D Bond Bread." Alleged imitations of the sun and varying forms of statements on the wrapper were used to convey this information. It is claimed by this witness that on account of this advertising the words "Sunshine Vitamin-D" have come to indicate to the purchasing public that the bread so sold is Bond Bread. This witness was of the opinion that the use by appellee of the word "Sun-

431

fed" would damage and interfere with the business of appellant.

No testimony was offered by the appellee, but notice was given under rule 154 (e) of the Patent Office that, in lieu of such testimony, appellee would rely on certain magazine articles and Patent Office records. The appellant's witness Frazier gave the only testimony which was offered by either side, as to the use, by appellee, of its mark "Sunfed" on bread, in the following question and answer: "Q. 139. Is Commander-Larabee Corporation engaged in the baking business? A. Not that I know of. Not commercial baking."

It is contended by the appellant that the record here affirmatively shows that the appellee is not entitled to registration of its mark "Sunfed." Appellant charges that the appellee did not make a trade-mark use of this mark, but was and is a manufacturer of flour only, and that the alleged trade-mark use consisted of the practice by appellee of furnishing labels containing its mark "Sunfed" to bakers who baked bread from flour made by the appellee, and that the appellee itself was not engaged in the business of making and selling bread. Some consideration of the pleadings must be had in this connection. When the sworn application for registration was filed by the appellee, it had made a prima facie case which entitled it to registration, assuming that the mark was otherwise entitled to registration. Upon this verified application the Patent Office might have proceeded and issued a certificate of registration. In other words, the office was justified, under the law, in coming to the conclusion, from this application, that a proper trade-mark use of the mark had been established. When the appellant filed its notice of opposition, this was its bill or complaint. The answer of the applicant thereto, in law, was the answer to such bill or complaint, and thereafter the cause was at issue in the opposition proceeding. It was thereupon incumbent upon the opposer to overcome, by proof, the prima facie case of trade-mark use arising from the sworn application of the appellee. This sworn application was required by the law to be supported by labels which showed the trade-mark use by the appellee, and such labels appear in the record.

The appellant contends it has overcome such prima facie case by the testimony of the witness Frazier which has been hereinbefore quoted. This witness stated, in answer to the inquiry, "Is Commander-Larabee Corporation engaged in the baking business?" "Not that I know of. Not commercial baking." It cannot be said that this is sufficient to overcome the prima facie case arising from the sworn application and the accompanying labels. While the witness Frazier was engaged in the baking business, with a large number of business connections, it does not follow that, because he did not know of the appellee being engaged in the baking business, as a matter of fact it was not so engaged. A case in point is William Wrigley, Jr. & Company v. Norris, 34 App.D.C. 138, 141, where it was said: "The sale of the spearmint gum by the Huff Company covered such a wide area that the testimony of a few witnesses that they had never heard of such sales falls far short of overcoming the case then made by the opposition. It follows that the decision of the Commissioner is right, and is therefore affirmed."

We said in Montevallo Coal Mining Co. v. Little Gem Coal Co., 48 F.(2d) 411, 18 C.C.P.A. (Patents) 1195, that a prima facie case was made from the applicant's sworn application that its mark was used by it as required by the statute, and that, when such prima facie case was rebutted, the burden was upon the applicant to establish by a preponderance of the evidence its exclusive use.

The procedure in trade-mark opposition cases is quite fully developed by the Patent Office in Rosenberg Co. v. Phillips-Jones Company, Inc., 1921 C.D. 81, 289 O.G. 411. There the Assistant Commissioner, after citing several authorities, among which is William Wrigley, Jr. & Company v. Norris, supra, thus well stated the law: "All this leads to the conclusion that the filing of a regular application for the registration of a trade-mark supported by an affidavit under section 2 and accompanied by specimens of the mark as actually used should be taken as prima facie proof that the applicant was the owner of the mark on the date the application was filed, and that fact having been established the presumption must arise that the applicant continued to own the mark and to use it."

It is argued by the appellee, and intimated by the Examiner of Interferences herein, that it is not essential that the owner of a trade-mark use the mark on goods produced or manufactured by itself, but that the mark may be properly used

upon his goods in fact manufactured and produced by others. There is ample authority for this position. Menendez v. Holt, 128 U.S. 514, 520, 9 S.Ct. 143, 32 L. Ed. 526; Ralston Purina Co. v. Saniwax Paper Co. et al. (D.C.) 26 F. (2d) 941. But, without going into this point further, it is sufficient to say that the court is of opinion the opposer has not overcome the prima facie case made by the applicant by its application and proofs submitted therewith.

Many questions have been raised and discussed during this hearing which it is unnecessary to here pass upon. For instance, the right of the opposer to oppose was raised, and this question was decided adversely to the opposer by the Examiner of Interferences. The decision of the Examiner of Interferences was, however, reversed by the Commissioner on this point; the Commissioner holding that upon the record the opposer had shown such use of his mark as entitled him to oppose. In view of our conclusions, we find it unnecessary to pass upon this point.

This leaves for decision, therefore, but one question, whether the mark of the appellee, proposed to be registered, is so confusingly similar to the notation as applied to appellant's bread wrappers as to be likely to cause confusion as to origin.

The mark proposed to be registered by the appellee consists of the word "Sunfed." The various marks, as used by the appellant, are fully described by the Commissioner in the portion of the decision which we have hereinbefore quoted, and little need be added to what the Commissioner has therein stated. A copy of the wrapper which is used by the appellant to inclose the individual loaf of bread is before us. The surface of the wrapper is covered with a number of varying designs and marks. Principal among these is a label about 2½ by 4½ inches in size. The printed matter of this label is inclosed by a border simulating the curvilinear design usually found on the margin of bonds, paper money, and the like, with a simulation of a seal wafer in the lower right-hand corner. This wafer is printed in red, while the border is in green. Across the red wafer are the words "Bond Bread" in white. Within the border is certain language in the form of a bond or obligation. The obligor is represented as the General Baking Company. The goods upon which the bond purports to be issued are de-

scribed as "Bond Bread Trade Mark Reg. U. S. Pat. Off.," following which is a warranty by the General Baking Company of the purity and quality of the bread. The principal part of the reading matter consists of the words "Bond Bread," which are printed in letters approximately one-half inch in height; the remainder of the printed matter being in small sized type. Other labels upon the wrapper consist of a rectangular figure surrounded by a similar border, and containing the words, in large type, "Bond Bread," with a notation of the registration of the trade-mark. Interspersed between these labels are simulations of the sun, which consist of a number of red rays extending outwardly from the circumference of a circle. The central portion of this circular part contains the following language: "This bread brings you the extra Sunshine Vitamin-D you need," with additional wording around the periphery, "Licensed by the Wisconsin Alumni Research Foundation under Steenbock Pat. No. 1,680,818." The background of the center of this design is yellow. There are also small alleged representations of the sun around the border, consisting of a yellow circular central portion with red rays radiating therefrom.

It seems to us that the preponderating feature in these labels is the words "Bond Bread," and that the notation that "This bread brings you the extra Sunshine Vitamin-D you need" are merely incidental to the words "Bond Bread." The use is not so much a trade-mark use as it is that of an advertisement or statement of the quality of the product. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U.S. 537, 546, 11 S.Ct. 396, 34 L.Ed. 997.

We are of opinion that the purchaser would not be likely to become confused when desiring to purchase Bond Bread by the appearance of other bread which bore the label "Sunfed." Millions of dollars have been spent by the opposer-appellant in advertising its label "Bond Bread." Having become convinced in its business that it would add to the quality of its product by irradiating the bread with sunlight and thus producing vitamin D therein, this method was adopted and used, and has apparently become very successful. The mark which the appellee seeks to register is the mark which it has disclosed in the drawing accompanying its application, and consists of the word "Sunfed." While it is true that the labels which are offered

with the application contain, in addition to the word "Sunfed," an illustration of red rays radiating outward from this word, as we take it, the probable confusion in this case must rest upon the representation as sought by the appellee by the possible registration of the word "Sunfed." In re Standard Underground Cable Co., 27 App. D.C. 320.

We agree with the tribunals below that no confusion in trade would likely arise, and are therefore of the opinion that the opposition was properly dismissed and that the tribunals of the Patent Office did not err in permitting registration of appellee's mark.

The Commissioner held that the appellant had not put in issue by his pleading the failure of the appellee to show a trademark use of its mark. This was upon the theory that the allegation of the notice of opposition was stated only on information and belief. On this point, the Commissioner relied upon the authorities collated in 49 Corpus Juris, 148. In view of our conclusions, hereinbefore given, we do not find it necessary here to decide that question, and the point is reserved for future consideration, when its decision becomes necessary.

Finally, it is alleged as error that the Commissioner did not reopen the case to permit the appellant to offer further testimony as to appellee's alleged failure to make a trade-mark use of the mark in question. Notice of opposition was filed June 28, 1932. Testimony was taken on behalf of appellant on February 20, 1933. Thereafter the matter was considered by the Examiner of Interferences and Commissioner of Patents, and repeatedly argued by the solicitors for the appellant. It was not until October 20, 1934, after the Commissioner had exhaustively examined the issues for a second time, that appellant petitioned for a reopening of the matter to take further testimony. As is well said by the Commissioner: "Opposer had full opportunity at the proper time to take such testimony as it deemed material to its case, including that of applicant's officers which it now seems to think desirable. There must be an end to litigation, even in the Patent Office."

The allowance of this reopening was a matter within the discretion of the Commissioner. We find no abuse of this discretion in his refusal of the application.

The decision of the Commissioner of Patents is affirmed.

Affirmed.